[S. F. No. 15252.   In Bank.—April 16, 1935.]

G. W. BRAINARD, Respondent, v. W. J. FITZGERALD et al., Defendants; MASSACHUSETTS BONDING AND INSURANCE COMPANY (a Corporation), Appellant.

Fred A. Watkins for Appellant.

John F. O'Sullivan, as *Amicus Curiae* on Behalf of Appellant.

Norman A. Eisner and Grant H. Wren for Respondent.

Craig & Weller, Frank C. Weller, Merrill L. Granger, Dinkelspiel & Dinkelspiel, William H. Penaat and Fred S. Herrington, as *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—This is an appeal from a money judgment entered in favor of the plaintiff in an action brought

against the surety on an attachment bond furnished in another action.

It appears that the Richard Behrendt Company was a copartnership engaged in the business of selling at wholesale toys, fireworks and novelties. At about 9:15 o'clock on the morning of January 20, 1932, the copartnership executed and delivered to the plaintiff herein, who is the secretary of the board of trade of San Francisco, an assignment of all its assets for the benefit of creditors generally. The assignment is on a printed form used generally by boards of trade. We shall not pause to quote its provisions, for it is conceded on all sides that the assignment was not to benefit any individual creditor or group of creditors, but, as stated, was for the benefit of creditors generally. Immediately following such assignment, and at about 10 o'clock the same morning, a representative of the assignee arrived at the premises occupied by the copartnership and proceeded to check the books and to take inventory, remaining at the store until approximately 2 o'clock, when he left to attend a meeting at the board of trade office. During his absence, and some time between 2 and 3 o'clock of the same afternoon, the sheriff levied an attachment and placed a keeper in the premises. The attachment issued in an action commenced that day by a creditor of the copartnership. It is undisputed that the assignment was executed and delivered several hours prior to the levy of the attachment. Shortly after such levy the assignee served a third party claim on the sheriff, whereupon the attaching creditor furnished a bond, the one here sued on and in which the appellant is named as surety, to prevent the release of the property. The sheriff having subsequently removed certain quantities of the attached merchandise and sold the same under execution, this action was commenced. Though named in the complaint as defendants, the action was abandoned as to the sheriff and attaching creditor and prosecuted solely against the surety on the attachment bond. From a judgment for plaintiff in the sum of $3,000 the surety has appealed.

It is the appellant's contention, in substance, that the assignment made by the debtor to the respondent, though for the benefit of creditors generally and prior in point of time to the levy of the attachment, is nevertheless sub-

servient thereto inasmuch as it was not executed in conformity with sections 3449–3473 of the Civil Code and was not accompanied by a change of possession.

Respondent, on the other hand, while conceding that the assignment to him does not satisfy the statutory requirements as to form and recordation, urges that it constitutes a valid common-law assignment for the benefit of creditors generally and being prior in point of time to the attachment should prevail over the attachment.

Concisely stated, we are required to determine whether a valid common-law assignment of stock in trade for the benefit of creditors generally prevails over a subsequent attachment. No question of actual fraud arises as to the assignment herein.

So far as material here, section 3440 of the Civil Code provides that ''Every transfer of personal property . . . is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession . . . ;

''Provided, also, that the sale, transfer, or assignment of a stock in trade, in bulk, . . . otherwise than in the ordinary course of trade and in the regular and usual practice and method of business of the vendor, . . . unless at least seven days before the consummation of such sale, transfer, assignment . . . , the vendor, transferor, assignor . . . or the intended vendee, transferee, assignee . . . shall record in the office of the county recorder . . . a notice of said intended sale, transfer, assignment . . . ;

''Provided, further, that the provisions of this section shall not apply or extend . . . to any transfer or assignment, statutory *or otherwise*, . . . made for the benefit of creditors generally. . . . ''

The italicized words, ''or otherwise'', were added to the section by an amendment thereof in 1917 (Stats. 1917, p. 225) and, in our opinion, indicate a definite legislative intention to exempt from the provisions of the section not only statutory assignments for the benefit of creditors generally executed in accordance with sections 3449–3473, *supra,*

but all other assignments, executed in good faith, for the benefit of creditors generally. To conclude otherwise would be to disregard and render meaningless the very language placed in the section by the cited amendment.

In some of the decisions we find persuasive language suggesting that common-law assignments for the benefit of creditors generally are valid and exempt from the provisions of section 3440, *supra*. The ·decision in *Jarvis* v. *Webber,* 196 Cal. 86, 97–99 [236 Pac. 138], after reviewing the history of the pertinent code sections having to do with assignments for the benefit of creditors, and the cases construing the same, contains the following:

''While the case of *Heath* v. *Wilson* (139 Cal. 362 [73 Pac. 182]) was pending, in fact only a few weeks before the decision was handed down, section 3440 of the Civil Code, providing that certain transfers of personal property are conclusively presumed to be fraudulent, if made· by a person having at the time the possession or control of the property and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, was amended (Stats. 1903, p. 111) to provide that the provisions of the section should not apply or extend to any transfer or assignment made for the benefit of creditors generally. In 1905 (Stats. 1905, p. 622), section 3451 of the code was amended by providing that the provisions of the title relating to assignments for the benefit of creditors do not affect the power of a person, although insolvent, to transfer property in good faith to a particular creditor, or creditors, or to some other person or persons in trust for the purpose of paying or securing the whole or part of a debt owing to such a creditor or creditors. Under a more recent amendment (Stats. 1917, p. 255), the provisions of section 3440, *supra,* relating to fraudulent transfers, are declared not to apply or extend to any transfer or assignment, 'statutory or otherwise', made for the benefit of creditors generally.

''We think it must be conceded, therefore, that two kinds of transfers or assignments for the benefit of creditors generally are recognized in the code sections we have enumerated. One is the statutory assignment for the benefit of creditors, enabling an insolvent debtor, through his assignee, to provide for the immediate conversion of the as-

signed property, or the disposal thereof, and the distribution of the proceeds ratably among the creditors. (Civ. Code, sec. 3449 et seq.) If the debtor adopts this method of satisfying his creditors, it matters not whether the creditors give their consent to the transfer. If the provisions of the code are complied with, the assignment is binding on consenting and nonconsenting creditors alike. The other form of transfer is one which, while containing certain characteristics of an assignment for the benefit of creditors, is, in effect, only a conveyance in trust by way of paying or securing certain obligations of the debtor. These transfers are not invalid because they do not conform to the provisions of the sections of the code relating to assignments for the benefit of creditors. (Civ. Code, secs. 3432 and 3451; *Heath* v. *Wilson, supra.*) If made for the benefit of creditors generally, such conveyances are protected in their operation as to delivery, and continued change of possession of the property transferred, by the exception contained in section 3440 of the code as amended. But in the present case we are unable to agree with appellant that the transaction whereby D'Egilbert and his allied corporations transferred the property to Jarvis resulted in an assignment for the benefit of creditors generally. By its terms, it inures only to the benefit of one named creditor of the grantors, 'and all other creditors . . . who shall consent to the agreement', the final provision being that the creditors 'who shall consent to the trust in writing shall be entitled to an equal *pro rata* right, with all other creditors who consent to the trust in writing, in the benefits thereof'. A nonconsenting creditor is not bound by such a transfer, and his consent thereto cannot be compelled by any act of the debtors, the trustee, or the other creditors. In order, therefore, that an attempted transfer by a debtor, for the purpose of paying or securing one or more creditors—*which does not amount to an assignment for creditors generally*—may be made effective as against nonconsenting creditors, the conveyance must be executed with due regard to the general principles of law applicable to such transactions. We are unable to construe the transfer in this case as an assignment for the benefit of creditors generally. It was, therefore, not within the exception provided by section 3440, *supra.* The question whether or not delivery and change of possession attended

the transaction thus becomes a material consideration in the case.''

The assignment here under consideration, as distinguished from that involved in the cited case, was made for the benefit of creditors generally and is not therefore hedged with the restrictions surrounding an assignment for the benefit of a limited number of creditors, as was the situation in *Jarvis* v. *Webber, supra.*

We also find language in *Moore* v. *Schneider,* 196 Cal. 380, 386 [238 Pac. 81], which, contrary to appellant's contention herein, tends to recognize the existence in this state of common-law assignments for the benefit of creditors generally. In the course of the opinion it is there stated that ''In the case of an assignment for the benefit of creditors, either statutory *or nonstatutory,* the estate passes as the result of some positive act or agreement on the part of the owner of the property. In the one case, the estate of the insolvent 'devolves' upon the assignee by operation of law. In the other, the estate is 'granted' by the owner.'' As in *Jarvis* v. *Webber, supra,* but as distinguished from the case at bar, the nonstatutory assignment in *Moore* v. *Schneider, supra,* was not made for the benefit of creditors generally.

The same criticism may be leveled at the attempted assignment involved in *Kaye* v. *Jacobs,* 122 Cal. App. 421, 428 [10 Pac. (2d) 186], wherein the opinion, after indicating that said assignment did not satisfy the requirements essential to a statutory assignment, went on to point out that, ''Since, however, the assignment which was attempted to be made by the instrument of October 6, 1924, was an assignment of a stock in trade, it must be considered with reference to the provisions of section 3440 of the Civil Code. This section expressly provides that the sale, transfer or assignment of a stock in trade, in bulk, will be conclusively presumed to be fraudulent and void as against the existing creditors of the vendor, transferor, or assignor unless the notice required by the statute shall be given. Assignments for the benefit of creditors generally are expressly exempted from the requirements of the statute. It is not contended that the assignment attempted to be made by the instrument under consideration was intended as an assignment for the benefit of creditors generally, but it is conceded that it was intended to operate as an assignment of a stock in trade for the benefit of a certain class of creditors, viz., the mer-

cantile creditors or creditors of the jewelry business. It was not, therefore, under the circumstances disclosed, an assignment exempted from the provisions of section 3440 of the Civil Code. (*Jarvis* v. *Webber,* 196 Cal. 86 [236 Pac. 138].)''

The assignment of the entire assets of the copartnership having been made for the benefit of creditors generally, it falls squarely within the proviso of section 3440, *supra,* and does no violence to the provisions of that section. ■ It is supported by a consideration (the indebtedness to the creditors), and vested title in the assignee as trustee for all the creditors (*Jarvis* v. *Webber, supra*). The transfer having been made for the benefit of creditors, their acceptance is presumed until the contrary is shown. (*Forbes* v. *Scannell,* 13 Cal. 242, 288; Bump on Fraudulent Conveyances, 2d ed., 327.) While the nonacceptance of any particular creditor may result in postponing him to other creditors, it is not fatal to the assignment (Bump, *supra*), for preferences are not illegal under our law. (Sec. 3451, Civ. Code.) This being so, the assignment prevails over a subsequent attachment or execution. (Bump, *supra*.) In other words, a nonconsenting creditor cannot prefer himself over those who abide by the transfer. The assignment herein having been made in good faith, the property right passed out of the copartnership debtor, and thereafter no legal title existed in it on which the attachment could have fastened.

Because of varying statutory provisions there involved, we shall not undertake to refer to the numerous authorities from other jurisdictions wherein common-law assignments have been held to take priority over subsequent attachments or executions of an opposing creditor. In the absence of any conflict with or violation of our statutory law, we are not inclined to interfere with the practice developed by local boards of trade of procuring assignments, executed in good faith, for the benefit of creditors generally. Experience has shown that this practice has much to commend it.

The judgment is affirmed.

Curtis, J., Shenk, J., Thompson, J., Seawell, J., Preston, J., and Langdon, J., concurred.

Rehearing denied.